IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

HOLLIS D. HALL,                        )
                                       )
              Plaintiff,               )
                                       )
v.                                     )      Case No. CIV-10-163-RAW
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social                 )
Security Administration,               )
                                       )
              Defendant.               )

FILED

SEP 15 2011

WILLIAM B. GUTHRIE
Clerk, U.S. Dist. Court
By_____
      Deputy Clerk

### REPORT AND RECOMMENDATION

Plaintiff Hollis D. Hall (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries:    first, whether the decision was supported by
substantial evidence; and, second, whether the correct legal
standards were applied.    Hawkins v. Chater, 113 F.3d 1162, 1164
(10th Cir. 1997)(citation omitted).    The term "substantial
evidence" has been interpreted by the United States Supreme Court
to require "more than a mere scintilla. It means such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938)).   The court may not re-weigh the evidence nor substitute
its discretion for that of the agency.   Casias v. Secretary of
Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).
Nevertheless, the court must review the record as a whole, and the
"substantiality of the evidence must take into account whatever in
the record fairly detracts from its weight." Universal Camera
Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d
at 800-01.

### Claimant's Background

Claimant was born on February 25, 1961 and was 47 years old at
the time of the ALJ's decision. Claimant completed his high school
education. Claimant has worked in the past as a construction
worker. Claimant alleges an inability to work beginning November

3

22, 2006 due to limitations resulting from pain, headaches, depression, anxiety, degenerative disc disease, and chronic obstructive pulmonary disease ("COPD").

## Procedural History

On November 22, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 15, 2009, an administrative hearing was held before ALJ Richard J. Kallsnick in Tahlequah, Oklahoma. On June 15, 2009, the ALJ issued an unfavorable decision on Claimant's application. On April 9, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with some limitations.

4

## Errors Alleged for Review

Claimant asserts the ALJ committed error in:  (1) reaching an erroneous RFC determination; and (2) failing to engage in a proper credibility analysis.  Claimant also alleges the Appeals Council failed to consider the Attending Physician's Statement of Claimant's treating physician, Dr. Mark Rogow, submitted after the hearing.

## RFC Evaluation

Claimant's spinal problems first arise in the medical record in March of 2000 when he was attended by Dr. Benjamin G. Venner. Claimant complained of left hip pain with radiation into his upper leg.  He had associated low back pain and neck discomfort.  (Tr. 1570).

On March 13, 2000, Claimant was again seen by Dr. Venner.  An MRI showed Claimant had evidence of disc degeneration and protrusion at L4-5.  At L5-S1, Dr. Venner found some long standing settling and instability perhaps brought on by an incomplete fusion of the spine in the area.  (Tr. 1567).

On March 23, 2000, Claimant went to Saint Francis Hospital, complaining of left hip radiation, upper leg and associated low back and neck discomfort.  Testing revealed a Grade I spondylolisthesis of L-5 on S-1 related to a chronic appearing

5

bilateral spondylolysis of L-5.  A mild disc bulge at L4-5 with no herniation was also noted.  Moderate to mild bilateral neuroforaminal narrowing was found with severe discogenic degenerative changes.  (Tr. 1571).

On July 13, 2006, Claimant was found to have severe degenerative arthritis affecting his neck.  (Tr. 1480).

On March 22, 2007, Claimant underwent a consultative examination by Dr. Jimmie W. Taylor.  Dr. Taylor diagnosed Claimant with Generalized Anxiety Disorder/Depression, Chest Pain with a Question of Angina, COPD, Dyspnea on Exertion, Degenerative Joint Disease in the low back, Degenerative Disc Disease in the low back, Degenerative Joint Disease in the neck, Question of Coronary Artery Disease, Grinds Teeth, and Tinnitus.  (Tr. 388).

On June 6, 2007, Claimant underwent a Physical Residual Functional Capacity Assessment by Dr. Carmen Bird.  Dr. Bird found Claimant could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and/or pulling.  Dr. Bird found no postural limitations, manipulative limitations, visual limitations, communicative limitations, environmental limitations. (Tr. 400-07).

6

On August 6, 2007, Claimant underwent an MRI which showed bilateral uncovertebral joint degeneration at C4-5, C5-6, C6-7. Moderate to severe degenerative disc disease was found at C4-5, C5-6, C6-7. Spondylosis deformans was noted at C-4 through C-7. No acute fracture or subluxations were found. The impression was moderate degenerative changes in C-4 through C-7. (Tr. 414).

On September 25, 2007, Claimant underwent an additional scan. Spondylolysis versus pars defect was noted at L-5 with grade 2 anterolisthesis of L-5 adn S-1 with severe degenerative disc disease was noted at this level. Mild spondylosis involving the fourth lumbar vertebra was found. (Tr. 416).

Over the next several months, Claimant went to various medical facilities complaining of back and neck pain. The diagnoses remained unchanged from the earlier visits. (Tr. 412, 510, 539, 555, 1513-14).

On February 20, 2008, Claimant underwent another MRI on his cervical spine. Degenerative changes were noted at C3-4 and C4-5. An associated diffuse disc bulge with more focal central/right paracentral moderate disc herniation was found at C4-5. The imaging revealed degenerative changes at C5-6 including osteophyte formation. This area also showed an associated diffuse disc bulge with more focal left paracentral small disc herniation. At C6-7,

7

degenerative changes were noted associated more focal small central disc herniation.    At C7-T1, a small right paracentral disc herniation was found.   (Tr. 581 and 1067).

Claimant again visited medical facilities from March 1, 2008 through December 23, 2008.   Claimant complained of back pain, left hip pain, numbness, and tingling.   (Tr. 593, 1441-43, 1458).

On March 11, 2009, Claimant underwent a consultative examination by Dr. E. Joseph Sutton, II.    Dr. Sutton noted Claimant's history of degenerative arthritis and degenerative disc disease.   Claimant told Dr. Sutton he had low back pain, pain into his hips, and in his cervical spine.   (Tr. 1529-32).   Dr. Sutton also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on Claimant.   He found Claimant could frequently lift and carry up to 10 pounds and occasionally lift up to 50 pounds and carry.    Dr. Sutton also determined Claimant could sit, stand, and/or walk at one time without interruption up to 2 hours.   He also found Claimant could sit a total of between 6-8 hours in an 8 hour workday, and stand and/or walk between 4-6 hours in an 8 hour workday.    He determined Claimant could frequently reach and occasionally push/pull.   Dr. Sutton found Claimant could never climb ladders or scaffolds and occasionally climb stairs and ramps, stoop, kneel, crouch, and

8

crawl.   (Tr. 1539-44).

A Medical Source Statement of Ability to Do Work-Related Activities (Mental) was completed on March 10, 2009 by Dr. Denise LaGrand.   She determined Claimant had moderate limitations in his ability to understand and remember complex instructions, ability to carry out complex instructions, ability to make judgments on complex work-related decisions.   She noted Claimant experienced slow processing speed and his memory skills were borderline to low average.  (Tr. 1546).  Dr. LaGrand also found Claimant had moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers.  (Tr. 1547).

In her Psychological Assessment, Dr. LaGrand determined Claimant's overall cognitive functioning was in the low average range.  A significant difference was noted between his verbal and perceptual index scores and there was significant scatter among the subtests indicating that his full scale score is not an adequate representation of his overall functioning.  His scores ranged from mentally retarded to the high average range.  Dr. LaGrand diagnosed Claimant at Axis I:  Substance Abuse/Dependence, in full sustained remission by self-report, Major Depressive Disorder, moderate, Generalized Anxiety Disorder; Axis II:  Personality Disorder, NOS (Avoidant, Schizoid Traits); Axis III:  Deferred; Axis IV:

Occupational Problems; Axis V:  GAF of 45 - serious impairment in
occupational and social functioning.  Dr. LaGrand believed Claimant
was putting forth his best efforts on the exam.  (Tr. 1549-54).

On September 15, 2009, Dr. Mark Rogow completed a Medical
Source Statement of Ability to Do Work-Related Activities
(Physical) on Claimant.  This document was not before the ALJ but
was presented to the Appeals Council.  Dr. Rogow found Claimant
could sit for 40 minutes at one time, stand for 30 minutes at one
time, and walk for 20 minutes at one time.  He also determined
Claimant could sit for a total of 4 hours in an 8 hour workday,
stand for 2 hours in an 8 hour workday, and walk for 40 minutes in
an 8 hour workday.  Claimant was found to be limited in his ability
to engage in fine manipulation in both hands and limited in pushing
and pulling with his left hand.  Claimant could not do repetitive
movement in the operation of foot controls.  He was found to only
be able to occasionally bend, crawl, reach above his head, stoop,
and kneel and never to squat, climb, or crouch.  (Tr. 1587).
Claimant also could not tolerate exposure to unprotected heights,
being around moving machinery, driving automotive equipment, or
exposure to noise.  He could only occasionally be exposed to marked
temperature changes and exposure to dust, fumes, and gases.  Dr.
Rogow found Claimant would need to take unscheduled breaks during

an 8 hour work shift and would be absent from work due to his impairments for more than 4 days per month. Claimant would also need to elevate his feet periodically during the day. (Tr. 1588).

On October 5, 14, and 28, 2009, Claimant saw Dr. Rogow, complaining of back, neck, and shoulder pain. Claimant was found to have severe degenerative joint disease with the cervical area worse than the lumbar spine. Dr. Rogow noted decreased range of motion with positive straight leg testing. (Tr. 1581-84).

On October 26, 2009, Dr. Rogow authored a letter which stated Claimant had multiple severe and worsening medical conditions. Since his son committed suicide, Dr. Rogow noted Claimant's psychological well-being also suffered. Dr. Rogow found Claimant to be "totally and permanently disabled." (Tr. 1580).

In his decision, the ALJ found Claimant suffers from the severe impairments of depression, anxiety, degenerative disc disease, and COPD. (Tr. 10). After considering the medical evidence, the ALJ concluded Claimant retained the RFC to perform light work except that he is limited to simple tasks with routine supervision and limited contact with the general public. (Tr. 13).

Claimant first contends the decision has inconsistent statements in that in the RFC, the ALJ refers to "light work" where later in the decision he states Claimant's "activities are not

11

inconsistent with the limited range of light work in the RFC determination." (Tr. 13, 16). This Court perceives no inconsistency in these two statements. In the RFC, the ALJ establishes Claimant's ability to perform light work within the parameters the regulations use to define that term with added limitations. It is in consideration of these additional limitations that the ALJ later in the decision refers to a "limited range of light work in the RFC determination." No error is attributed to the use of these statements.

Other problems are present in the RFC findings. In arriving at the RFC, the ALJ regurgitated the findings of Drs. Bird and Sutton then concluded their reports were not inconsistent with the RFC determination. (Tr. 16). The reports from Claimant's treating physicians, including Dr. Rogow - which the ALJ did not possess when entering his decision - indicate significantly more limitations than reflected in the report of Dr. Bird upon which the ALJ relied. Moreover, Dr. Rogow's records directly conflict with the RFC found by the ALJ. The case must be remanded to the ALJ for consideration of Dr. Rogow's findings and to reconcile the differences in the other findings by the consultative physicians.

Additionally, with regard to Claimant's mental impairments, the extensive report of Dr. LaGrand reveals substantially more

limitations upon Claimant's ability to function in the workplace than found in the ALJ's RFC determination.  Indeed, the vocational expert testified that many of the areas of limitation found by Dr. LaGrand would preclude employment altogether - but certainly at the light work exertional level.  (Tr. 51-53).  On remand, the ALJ shall also re-evaluate his RFC determination in light of Claimant's mental limitations.

Claimant also contends the ALJ should have developed the record with regard to Claimant's COPD.  It is inconsistent for the ALJ to accept the report of Dr. Bird which found no environmental limitations in the workplace were appropriate while also finding Claimant's COPD represented a severe impairment.  The ALJ shall re-evaluate the effect of Claimant's COPD upon the RFC assessment and develop the record as needed in this area.

## Credibility Assessment

The ALJ called Claimant's credibility into question, reciting the boilerplate language from the regulations.  The only factual basis for rejecting Claimant's credibility cited in the decision is a reference to records from the Wagoner Community Hospital in November of 2002.  These records and hence the ALJ's decision reference Claimant's "long history of amphetamine abuse", noncompliance, ER visits stemming from his drug use, and

13

unwillingness to go into rehabilitation or keep his appointments for counseling. (Tr. 14). None of the records, however, relevant to the period of disability indicate any such drug abuse or noncompliance.     Claimant    visited    medical    facilities    with regularity, consistently complaining of back pain and consistently showing    objective    medical    records    indicating    degenerative conditions which would cause such claims of pain.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. <u>Id</u>.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses

14

or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's rejection of Claimant's testimony is not sufficiently tied to the factual record to withstand appellate scrutiny. On remand, the ALJ shall consider the totality of the applicable medical record in assessing Claimant's credibility and tie that evidence to his ultimate findings.

## Evidence Before the Appeals Council

Claimant contends the Appeals Council should considered the records from Dr. Rogow. This Court agrees and the ALJ shall do so on remand.

## Conclusion

The decision of the Commissioner is not supported by

15

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this _15th_ day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

16